Ford vs. Clarke.

Ford, Appellant, vs. Clarke, Garnishee, Respondent.

*September 2 — September 27, 1892.*

*Voluntary assignment: Delay in perfecting: Preferences: Partnership
and individual property.*

1. An interval of nine days between the making of the affidavits as to
   the nominal value of the assets (under sec. 1694, R. S.) and the ap-
   proval of the bond of the assignee, is *held* not to invalidate the
   assignment, where such nominal value had not changed during
   said interval and the bond was in a sum twice such value.
2. Delay in the perfecting of an assignment for the purpose of having
   all creditors join in a composition, and final consummation of the
   assignment in time to forestall attachments, do not show the assign-
   ment to be fraudulent.
3. An assignment conveyed to the assignee all the property of the as-
   signors in trust for their creditors both as a partnership and as
   individuals, the assignors being referred to therein indiscriminately
   as "the parties of the first part." Partnership assets and debts and
   individual assets and debts were listed separately. *Held,* that as the
   circuit court or judge has power (under sec. 1693, R. S.) to apply
   the assets according to law, the assignment is not void on the
   ground that it makes unlawful preferences.

APPEAL from the Circuit Court for *Dane* County.
The facts are sufficiently stated in the opinion.

For the appellant there were briefs by *Smith & Buell,*
attorneys, and *Frank M. Wootton,* of counsel, and oral
argument by *C. E. Buell.* They contended, *inter alia,* that
the principle which renders an attachment void unless issued
within a reasonable time after making the affidavit, applies
with equal force to a voluntary assignment. *Drew v. De-
quindre,* 2 Doug. (Mich.), 93; *Buckley v. Lowry,* 2 Mich.
418; *Wilson v. Arnold,* 5 id. 98; *Foster v. Illinski,* 3 Bradw.
(Ill.), 345. An assignment by partners of individual prop-
erty for the payment of the creditors of the firm, to the
exclusion of their individual creditors, is fraudulent and
void. *Crook v. Rindskopf,* 34 Hun, 457; *O'Neil v. Salmon,*

Ford vs. Clarke.

25 How. Pr. 246; *Lester v. Abbott*, 28 id. 488; *Jackson v. Cornell*, 1 Sandf. Ch. 348; *Wilson v. Robertson*, 21 N. Y. 587; *Menagh v. Whitwell*, 52 id. 146; *Second Nat. Bank v. Burt*, 93 id. 233, 244; *Saunders v. Reilly*, 105 id. 12, 18; *Bernheimer v. Rindskopf*, 116 id. 428; *Bulger v. Rosa*, 119 id. 459; *Nordlinger v. Anderson*, 123 id. 544, 548; *Durant v. Pierson*, 124 id. 444, 449; *Citizens' Bank v. Williams*, 128 id. 77; *Vernon v. Upson*, 60 Wis. 418; *Willis v. Brenner*, id. 622; *Powers v. C. H. Hamilton Paper Co.* id. 23; *Keith v. Armstrong*, 65 id. 225, 228; *Lord v. Devendorf*, 54 id. 491, 495.

For the respondent there was a brief by *Lewis & Briggs*, and oral argument by *H. M. Lewis*.

ORTON, J. The appellant brought suit against the defendants S. E. Bronson, G. C. Draper, and Melissa Bronson to recover the sum of $1,082.69, on the 31st day of August, 1891, and recovered judgment for the same September 28th, the same year. On the said 31st day of August, 1891, the respondent was summoned as garnishee of said defendants, and he submitted to the court the question of his liability as garnishee, he then being the assignee of a voluntary assignment, for the benefit of their creditors, of the said defendants. The circuit court held the assignment valid, and discharged the respondent as garnishee, and rendered judgment in his favor for costs; and the appellant has appealed from the same.

The assignment was executed on the 19th day of August, 1891, by Seymour E. Bronson, George C. Draper, and Melissa E. Bronson, partners under the name and style of Bronson, Draper & Co.; and Seymour E. Bronson, George C. Draper, and Melissa E. Bronson as individuals, to *Melville C. Clarke*, the assignee, assigning all their property "as such copartners or individually," except what is exempt. The affidavits of one of the assignors, and of another per-

son, of the nominal value of the assets of said assignors, were made on the 20th of August, 1891; and on that day the affidavits and assignment were sent from Mazomanie to the city of Madison, in Dane county, by the assignors to their attorneys at Madison, where they were presented to a court commissioner, and the bond with sureties was given and approved, and the assignment completed on the 29th day of August, 1891. There was testimony to the effect that said attorneys were directed to hold back said assignment in order to obtain a compromise or delay of their creditors, but not to hold off so long as to endanger the assignment by intervening attachments. The contention of the learned counsel of the appellant is that the assignment is void, and therefore no protection to the garnishee, *first*, because the affidavits of the nominal value of the assets were made on the 20th day, and the bond approved on the 29th day, of August, 1891; *second*, because the assignment was made to defraud creditors; and, *third*, because it makes unlawful preferences.

1. It is contended that the court commissioner could not know the nominal value of the assets when he approved the bond, as such value may have changed, between the 20th and 29th days of August, 1891. The bond must be in a sum *not less* than the whole amount of the nominal value of the assets, and that value is to be ascertained by the oaths of the assignor and one or more witnesses. Sec. 1694, R. S. The bond in this case was made in the sum of *twice* the nominal value of the assets. It was shown on the trial that the nominal value of the assets had not changed in the interval. The *nominal* value of the assets could not very well change, but the *real* value might. As long as the property remained under the assignment and in existence, its nominal value would remain the same. If the nominal value of the assets could change at all, it is not very probable it would increase more than 100 per cent. in nine days,

and the amount of the bond would still not be less than the nominal value of the assets, and, if it should diminish, the bond would certainly not be impaired.    The court commissioner could very well presume that such nominal value had not changed.    In *Lindsay v. Guy*, 57 Wis. 200, the interval between the oaths of nominal value and the approval of the bond was three days; and in *Farwell v. Webster*, 71 Wis. 485, it was five days, and yet the bond was held good. There is a material difference between an assignment and an attachment.    The attachment can and should issue at once, as soon as the affidavit is made, and they are simultaneous as near as possible.    It is not possible, in most cases, to perfect an assignment on the day it is signed and the nominal value of the assets ascertained by the proper oaths.    The different steps are usually separated and taken *seriatim* and on different days.    The attachment cases cited in the brief of the appellant are not applicable.    When it is shown that the nominal value of the assets had not changed if it could, and that the bond is still in a sum of twice such nominal value, and that the assignment is not substantially affected in any way by this interval of time, it is hardly worth while to be technical.    It is difficult to say that such an interval of five days does not affect the assignment, and that such an interval of nine days invalidates the assignment, and we cannot so hold.

2.  The delay in perfecting the assignment for the purpose of having all the creditors join in a composition or compromise is certainly no evidence of fraud.    Both the object and intent were laudable and lawful, and repel the very idea of an intended fraud on creditors.    The consummation of the assignment in time to forestall attachments ought to be attributed to the lawful and proper motive of having all the creditors provided for alike by an assignment, rather than to have all the property sacrificed by a summary proceeding to satisfy one or more creditors, who could win in the

Ford vs. Clarke.

race of diligence. If a lawful, rather than a fraudulent, intent can as reasonably be attributed to such delay and final consummation of the assignment, it is our duty to so construe this conduct of the assignors. We are unable to find any fraud in fact from what was done, or the intent thereof. Most assignments are *hurried* and finished with dispatch, in anticipation of attachments, and it would not do to declare all such assignments void for fraud on such a ground.

3. Does this assignment make unlawful preferences? It is said that all the property of both the partnership and individual assignors may be applied to individual or partnership debts, indiscriminately, as the assignee may choose. We cannot think that this is a correct construction of the assignment. All the property of the partnership and the individual parties to the assignment, and a list of their creditors, are separately given. It is in trust for their creditors, both as a partnership and as individuals. They are called, indiscriminately, the "parties of the first part." In placing the claims of their laborers, etc., in the first class, they are called the laborers, etc., "of said parties of the first part." The claims of the laborers of the partnership, and of the laborers of the individual parties to the assignment, are clearly to be paid out of the separate property of each. They are called the "parties of the first part," wherever the payment of the creditors is provided for. There is nothing in the assignment against a distribution of the assets according to law, that we are able to find. The statute (sec. 1693, R. S.) provides that "the circuit court, or the judge thereof in vacation, shall have supervision of the proceedings in all voluntary assignments made under the provisions of this chapter, and *may make all necessary orders* for the execution of the same." Under such constant supervision of the court, and of the judge thereof in vacation, there can be no fear or apprehension that there will be any unlawful preferences in the distribu-

tion of the assets or the payment of the creditors, *forced* by the terms of the assignment. The court can *marshal* the assets, and apply them by paying partnership debts out of partnership assets, and individual debts out of private or individual property. *Severson v. Porter,* '73 Wis. 70. In that case all the property was assigned as partnership property to pay partnership debts, and yet the court could marshal the property and the debts of the firm and of the individuals, and apply the same according to law. *P. C. Hanford Oil Co. v. First Nat. Bank,* 126 Ill. 584; *Davis v. Chicago Dock Co.* 129 Ill. 180.

*By the Court.*— The judgment of the circuit court is affirmed.